IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WELLS FARGO BANK, N.A.,

        Plaintiff/Counter Defendant,

v.

CLUNAS FUNDING GROUP, INC., and CLUNAS
FUNDING GROUP, INC., PROFIT SHARING
PLAN,

        Defendants/Counter Claimants.

3:11-CV-1556-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

    Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), brought this equitable subrogation action against defendant Clunas Funding Group, Inc. ("CFG"), on December 29, 2011, to resolve a dispute over the priority of the parties' liens on property located at 16265 Barlow Drive in Oregon City, Oregon (the "subject property"). Wells Fargo amended its complaint against CFG on February 17, 2012, and again on May 8, 2012. CFG answered Wells Fargo's second amended complaint on June 29, 2012, filing counterclaims against Wells Fargo likewise seeking resolution of the parties' dispute over the priority of their respective liens on the subject property.

    Wells Fargo amended its complaint a third time on January 31, 2013, adding as an

Page 1 - FINDINGS AND RECOMMENDATION

additional defendant the Clunas Funding Group, Inc., Profit Sharing Plan ("CFG PSP" and, collectively with CFG, the "Clunas entities"), the current holder of title in the subject property. By and through its third amended complaint, Wells Fargo seeks either this court's declaration that Wells Fargo's recorded lien on the subject property is superior to any interest of either of the Clunas entities in the subject property or, in the alternative, award of money damages from CFG, and in addition seeks award of its attorney fees incurred in connection with these proceedings. On April 2, 2013, the Clunas entities answered Wells Fargo's third amended complaint, seeking this court's declaration that Wells Fargo has no enforceable interest in the subject property, to quiet title in the subject property in favor of CFG PSP, and award of the Clunas entities' attorney fees. The court's jurisdiction over this action is premised on the complete diversity of the parties and the amount in controversy. *See* 28 U.S.C. § 1332.

Now before the court is Wells Fargo's motion (#46) for summary judgment in its favor on all parties' claims and the Clunas entities' cross-motion (#53) for summary judgment as to all parties' claims. I have considered the motions, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Wells Fargo's motion should be denied and the Clunas entities' motion should be granted in part and denied in part as discussed below.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues

exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See id.*

## FACTUAL BACKGROUND[1]

### I.     The Parties

Wells Fargo is a national banking association organized under the laws of South Dakota with its principal place of business in California.

Defendant CFG is an Oregon financial services company headquartered in Oregon. CFG PSP is an incorporated profit-sharing plan organized under Oregon law for the benefit of CFG's

---

[1] Except where otherwise noted, the facts recited herein are undisputed.

Page 3 - FINDINGS AND RECOMMENDATION

employees. Gary Clunas is the principal of both Clunas entities, and one of CFG's two current employees.

## II. History of the Parties' Dispute

In or around September 2005, third-party Scott A. Henry obtained a mortgage loan on the subject property in the original principal amount of $273,000 (the "2005 loan") from World Savings Bank, FSB ("WSB," a corporate predecessor of a predecessor-by-merger of Wells Fargo, as to the assets and liabilities of which Wells Fargo appears to be the undisputed successor in interest). In connection with that transaction, Henry granted a deed of trust in the subject property in favor of WSB and its successors or assignees (the "2005 deed of trust"). The 2005 deed of trust was contemporaneously recorded in Clackamas County as a first position lien, superior to all other interests in the subject property as of September 16, 2005.

In or around February 2006, Henry obtained a second mortgage on the subject property (among other properties not at issue in these proceedings) from CFG in the original principal amount of $67,000 (the "2006 loan"). In connection with the 2006 loan, Henry granted a deed of trust in the subject property in CFG's favor (the "2006 deed of trust"). The 2006 deed of trust was contemporaneously recorded in Clackamas County as junior to the 2005 deed of trust.

In or around March 2007, Henry refinanced the 2005 loan by and through a new mortgage loan from WSB in the original principal amount of $340,000 (the "2007 loan"). At or around that same time, Henry contacted CFG to request CFG to "subordinate" the 2006 trust deed to the new security interest contemplated to replace the 2005 deed of trust in connection with the proposed refinancing. CFG expressly declined to do so, apparently on the ground that it had agreed to be secondary to a loan in the amount of $273,000, but not to a loan in a greater amount,

Page 4 - FINDINGS AND RECOMMENDATION

which would leave less equity in the home available to CFG in the event of a foreclosure on the senior interest. In connection with closing the 2007 loan, WSB obtained from its title company a document styled as a "Title Commitment" that listed the 2005 deed of trust as an existing interest in the subject property, but did not list the 2006 deed of trust.

Other than whatever inferences may fairly be drawn, if any, from Henry's request that CFG subordinate the 2006 deed of trust to WSB's contemplated new interest and from the absence of the 2006 deed of trust on the Title Commitment document prepared by WSB's title company, the record is silent as to whether WSB had actual knowledge of the 2006 deed of trust at the time the 2007 loan closed. Indeed, the Clunas entities have offered into the record excerpts from the deposition testimony of Robert Ferguson, a senior manager at Wells Fargo, tending to establish that Wells Fargo cannot now determine the state of WSB's knowledge of the 2006 deed of trust at the time the 2007 loan transaction took place:

> Q. . . . Do you know whether or not World Savings Bank had any policies or procedures that applied to decisions to make loans at the time the 2005 trust deed was granted?
>
> A. I'm not aware of World Savings' underwriting procedures or policies pertaining to these 2005 or 2007 deeds of trust.
>
> Q. Is there anyone employed at Wells Fargo that would be aware of that?
>
> A. I would make -- I can't be a hundred percent sure. I would assume that there's somebody that worked for World Savings that still works for the bank, but I can't be a hundred percent sure.
>
> * * *
>
> Q. Well, one of the things I'm trying to learn here is whether or not the decision-making process in the case of the 2005 and 2007 trust deeds conformed with policies of World Savings Bank. If it was your responsibility to answer that question, where would you go? What would

Page 5 - FINDINGS AND RECOMMENDATION

Case 3:11-cv-01556-PK    Document 64    Filed 07/22/13    Page 6 of 16

> you do?
>
> A. For -- so you're asking me -- again, you're asking me specifically to answer policies for an entity that's two entities removed from Wells Fargo Bank?
>
> Q. Well -- yes. I'm trying to determine how I would confirm whether or not the 2005 trust deed was granted in conformance with any applicable policies of World Savings Bank. And I'm trying to determine the same in regard to the 2007 trust deed. And I'm asking you, if that was your job -- because you've told me already you can't answer those questions. If it was your job to determine those answers, where would you go? Who would you ask? Where would you look?
>
> A. I would look in the loan file, and there's usually an underwriter approval checklist or something. **As far as trying to go back and re-create what the policy was and if the individual underwriter followed the policy, there would be no way to be able to tell, to re-create history on these.**
>
> Q. So there's no way to prove that the underwriter did comply with policy; is that correct?
>
> A. Not that I can tell.

Ferguson Deposition, 23:16 - 25:13 (emphasis supplied).

The proceeds of the 2007 loan were used, among other applications, to repay the 2005 loan in full, and the 2005 deed of trust was reconveyed to Henry contemporaneously with the 2007 closing. In connection with the 2007 loan, Henry granted a deed of trust in the subject property in favor of WSB and its successors or assignees (the "2007 deed of trust"). The 2007 deed of trust was recorded in Clackamas County in April 2007. Although closing instructions issued by WSB in connection with the 2007 loan appear to contemplate that the 2007 deed of trust would be recorded as a first position lien, superior to all other interests in the subject property, in fact the 2007 deed of trust was recorded without indication of its superiority to CFG's recorded prior interest in the subject property.

Page 6 - FINDINGS AND RECOMMENDATION

Henry subsequently defaulted on the 2006 loan, and CFG initiated foreclosure proceedings on the 2006 deed of trust. On May 21, 2009, CFG sent by certified mail a copy of a notice of default and intent to sell the subject property at public auction on October 5, 2009, to all parties known to CFG to have any interest in the subject property, including to WSB at the following address:

> World Savings Bank, FSB, ISAOA
> c/o Wachovia
> Attn: Cynthia Scott
> 4101 Wiseman Blvd.
> San Antonia, TX 78251-4201

CFG's mailing was received and signed for at that address on May 27, 2009.

On May 22, 2009, CFG recorded the notice of default and intent to sell the subject property in Multnomah County. In addition, CFG published a copy of the notice of default and intent to sell in the Daily Journal of Commerce, a Clackamas County publication, once a week for four successive weeks, on August 13, 20, and 27, 2009, and September 3, 2009. For reasons omitted from the evidentiary record, it appears that the public auction of the subject property did not, however, take place as noticed on October 5, 2009.

It appears that at an unspecified date in November 2009, Wells Fargo merged with the parent company of WSB (which did not survive the merger), and thereby became WSB's successor in interest.

On November 24, 2009, CFG sent by certified mail a copy of an amended notice of default and intent to sell the subject property at public auction on December 17, 2009, to the same parties as had received the original notice, including to WSB at the same address set forth above. The amended notice was recorded in Multnomah County on November 25, 2009, and it

Page 7 - FINDINGS AND RECOMMENDATION

does not appear that the amended notice was otherwise published. By contrast with CFG's mailing of May 21, 2009, there is no evidence of record indicating that the mailing of November 24, 2009, was actually received or signed for at CFG's address of record for WSB.

On December 17, 2009, the subject property was sold at public auction to CFG PSP for $102,000. None of the proceeds from that sale were applied to satisfy WSB/Wells Fargo's interest in the subject property. The subject property was conveyed from CFG to CFG PSP by trustee's deed, recorded in Clackamas County on December 29, 2009.

CFG PSP now purports to own the subject property free and clear of WSB's recorded interest, as to which plaintiff Wells Fargo is undisputedly the successor. Henry currently occupies the subject property as a tenant, and pays CFG PSP monthly rent in the amount of $1,500.

## ANALYSIS

Resolution of the parties' dispute is dependent on the applicability of the doctrine of equitable subrogation. Under Oregon's law of equitable subrogation, "the mere fact that a former mortgage was released, and a new one taken in place thereof, in ignorance of the existence of an intervening lien, is, in equity, deemed such a mistake of fact as will entitle the plaintiff to relief, although such lien is a matter of record." *Metropolitan Life Ins. Co. v. Craven*, 164 Or. 274, 280 (1940), *quoting Kern v. Hotaling*, 27 Or. 205, 212 (1895) *and citing Capital Lumbering Co. v. Ryan*, 34 Or. 73, 77 (1898) ("if one takes a new mortgage as a substitute for a former one, and cancels and releases the latter in ignorance of an existing lien upon the mortgaged premises, equity will, in the absence of some special disqualifying fact, restore him to his former position when it can be done without interfering with any new rights acquired on the faith of the altered

Page 8 - FINDINGS AND RECOMMENDATION

condition of the record"). The *Metropolitan Life* court held that:

> [W]here the holder of the junior lien will stand in the same position, if subrogation is allowed, as that in which he stood originally, and misrepresentation is made by the owner of the property to the effect that there is no junior lien, and the party advancing the money to defray the prior lien is not guilty of negligence, but secures an abstract from a reputable abstract company, submits the abstract to skilled attorneys and receives a report to the effect that it does not disclose any such junior lien upon the property involved, the right of substitution or subrogation to the priority of the prior lien is available.

*Id.* at 283. Moreover, the court's discussion of its own prior equitable subrogation cases makes clear that, in the absence either of an affirmative misrepresentation to the subsequent, refinancing lender that no intervening lien exists or of proof of the refinancing lender's ignorance of the intervening lien notwithstanding the refinancing lender's appropriate diligence, equitable subrogation is not available to the refinancing lender. *See id.* at 280-283. That is, "one, advancing money to discharge a prior lien on real or personal property and taking a new mortgage as security, is . . . entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was excusably ignorant," and not otherwise. *Id.* at 279.

Under Oregon law, the fact that an intervening mortgage may have been recorded, and thus have put the public on *constructive notice* of its existence, does not defeat the claim to subrogation of a refinancing lender whose mortgage discharged a previously senior lien where the refinancing lender lacked actual knowledge of the intervening mortgage and such lender's ignorance was not caused by the lender's failure of diligence, *see Rusher v. Bunker*, 99 Or. App. 303, 306-309 (1989), although the refinancing lender's failure to search the record for recorded interests may mitigate against application of the doctrine, *see id.* at 309. However, while the Oregon Supreme Court has not addressed equitable subrogation since the first half of the

Page 9 - FINDINGS AND RECOMMENDATION

twentieth century, the Oregon Court of Appeals has in more recent decades repeatedly affirmed the Oregon Supreme Court's equitable subrogation jurisprudence to the effect that a refinancing lender's *actual knowledge* of the intervening lien does defeat a claim to equitable subrogation. *See, e.g., Dimeo v. Gesik*, 164 Or. App. 567, 571 (1999) ("The doctrine does not apply . . . unless the lender proves that it was ignorant of the existence of the intervening lien and that its ignorance was not a result of inexcusable negligence"), *citing Holzmeyer v. Vandoren*, 172 Or. 176, 185 (1943), *Metropolitan Life*, 164 Or. at 283; *Sera Architects, Inc. v. Klahowya Condo., LLC*, 253 Or. App. 348, 364 (2012) ("As a general matter, actual ignorance of the intervening lien is required. . . ."), *citing Dimeo*, 164 Or. App. at 571.

In support of its motion, Wells Fargo urges the court to depart from the foregoing principles of Oregon law in favor of the approach adopted in Restatement (Third) of Property: Mortgages, pursuant to which:

    (a)    One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

    (b)    By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:

        (1)    in order to protect his or her interest;

        (2)    under a legal duty to do so;

        (3)    on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or

        (4)    upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably

Page 10 - FINDINGS AND RECOMMENDATION

> expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

Restatement (Third) of Property: Mortgages § 7.6 Subrogation (1997). The courts of states that have adopted the Restatement approach apply the doctrine of equitable subrogation without regard to whether the subsequent lender had actual knowledge of the intervening lien, on the theory that a lender's decision to refinance a borrower's loan ought not to impact the seniority of an intervening mortgage, the terms of which were negotiated on the assumption that the intervening mortgage would be junior to the original first-position lien. *See, e.g., Bank of Am., NA v. Prestance Corp.*, 160 Wn.2d 560, 561-562, 564-565, 565 n. 4, 567, 568-573 (2007) (*en banc*). Whatever the relative merits of Oregon's and the Restatement approaches, however, it is clear that Oregon has not adopted the Restatement approach but rather continues to apply the contrary rule, followed in a number of other jurisdictions, that equitable subrogation is available only to subsequent lenders able to establish actual ignorance of an intervening loan notwithstanding such lenders' commercially reasonable diligence. *See Dimeo*, 164 Or. App. at 571-572.

In the alternative, Wells Fargo argues that its motion should be granted under the governing standard for equitable subrogation in Oregon as articulated by the *Dimeo* court. Construing the record in the light most favorable to the Clunas entities for purposes of deciding Wells Fargo's motion, I disagree. Far from establishing WSB's actual, excusable ignorance of CFG's recorded 2006 deed of trust in or around March 2007, the evidentiary record to the contrary contains evidence from which a finder of fact could reasonably infer WSB's actual

Page 11 - FINDINGS AND RECOMMENDATION

knowledge of the 2006 deed of trust at the time it entered into the 2007 loan transaction, most saliently Henry's express request that CFG subordinate its 2006 loan to the contemplated 2007 loan. Because from the borrower's perspective it is effectively immaterial which of several liens on the borrower's property is senior and which junior, the fact that Henry posed the request strongly suggests that he did so at WSB's behest, with the implication that WSB had knowledge of the 2006 deed of trust at or around the time the 2007 loan closed. In addition, a finder of fact could reasonably infer from the fact that the 2006 deed of trust had been duly recorded that WSB either had actual knowledge of CFG's interest in the subject property or failed to exercise commercially reasonable diligence in conducting a title search before entering into the 2007 loan transaction. Moreover, there is simply no necessary inference from Wells Fargo's proffered evidence – chiefly the 2007 Title Commitment document listing the 2005 deed of trust but no other recorded interest in the subject property dating from prior to the 2007 loan, and secondarily WSB's closing instruction that the 2007 deed of trust be recorded as a senior interest – either that WSB contemporaneously lacked actual knowledge of the 2006 deed of trust or that WSB had exercised commercially reasonable diligence in determining the existence of recorded lines on the subject property prior to entering into the 2007 loan transaction. In consequence, Wells Fargo's motion for summary judgment should be denied.

The Clunas entities' motion presents a closer legal question, namely whether a finder of fact could reasonably infer from the evidence of record construed in the light most favorable to Wells Fargo that Wells Fargo cannot meet its burden to establish that WSB lacked actual knowledge of the 2006 deed of trust at the time it closed the 2007 loan, notwithstanding its commercially reasonable diligence. Wells Fargo's position regarding the Clunas entities' motion

Page 12 - FINDINGS AND RECOMMENDATION

is that a finder of fact could reasonably infer from the Title Commitment WSB obtained from its title company in February 2007 that WSB lacked actual knowledge of the recorded 2006 deed of trust at the time the 2007 loan closed, and from both the Title Commitment WSB's closing instructions issued in connection with the 2007 loan that WSB's ignorance of the 2006 deed of trust was commercially reasonable. That is, in regard to the Clunas entities' motion, Wells Fargo takes the position that, even if there is no *obligatory* inference of excusable ignorance, there is at least a *permissible* reasonable inference from the evidence of record on the basis of which a finder of fact could find in its favor. I find Wells Fargo's position untenable in light of the parties' evidentiary proffers and respective burdens of proof and persuasion.

Assuming *arguendo* that it is a permissible inference from the absence of any reference to the 2006 deed of trust on the 2007 Title Commitment document that, notwithstanding the facts that the 2006 deed of trust was duly recorded and that Henry expressly requested CFG to subordinate the 2006 deed of trust to the contemplated 2007 deed of trust, WSB lacked actual knowledge of the 2006 deed of trust at the time the 2007 loan closed, the evidence of record simply does not permit the inference that WSB's ignorance of the 2006 deed of trust was commercially reasonable. Although the evidence must be construed in the light most favorable to Wells Fargo for purposes of the Clunas entities' motion, it is Wells Fargo's ultimate burden to establish the commercial reasonableness of WSB's ignorance, and not the Clunas entities' burden to establish the opposite. This Wells Fargo effectively concedes it has not done and cannot do, as evidenced by the deposition testimony of Ferguson that it is no longer possible to determine what WSB's procedures were in 2007 for refinancing mortgage loans or whether WSB in fact followed its own procedures. *See* Ferguson Deposition, 23:16 - 25:13. Moreover, even absent Ferguson's

Page 13 - FINDINGS AND RECOMMENDATION

testimony, I agree with the Clunas entities that Wells Fargo's evidentiary proffers, none of which even tangentially address the standards by which commercial reasonableness could or should be measured, are insufficient to support any reasonable inference that WSB's ignorance of the 2006 deed of trust was commercially reasonable under the circumstances.[2] In consequence, I recommend that the Clunas entities' motion be granted as to Wells Fargo's claims against them, each of which depends entirely on Wells Fargo's theory that equitable subrogation is available retroactively to make the 2007 deed of trust senior to the 2006 deed of trust.

The evidence of record further establishes that CFG's foreclosure on and subsequent public auction of the subject property were properly noticed and conducted, and that CFG PSP purchased the subject property in good faith without actual or imputed notice that CFG lacked clear title to dispose of it.[3] In consequence, the effect of CFG's foreclosure on the 2006 deed of trust was to extinguish all interests in the subject property junior to the 2006 mortgage, including WSB's 2007 deed of trust, as to which Wells Fargo is the successor in interest. *See, e.g., Call v.*

---

[2] I acknowledge that the *Dimeo* court found that the question whether a refinancing lender was entitled to rely on a title report indicating the absence of intervening liens notwithstanding the lender's prior actual knowledge of the existence of such a lien was "not one that can be resolved by way of summary judgment, at least not on a record that contains no information about what is commercially reasonable under these circumstances," and remanded the question for decision by a finder of fact. *Dimeo*, 164 Or. App. at 572. However, the *Dimeo* court did not have before it, as this court does, testimony of a representative of the lender to the effect that the lender lacked any means of determining whether its own conduct in failing to discover the intervening lien had been commercially reasonable. Moreover, the *Dimeo* opinion provides no explanation for its conclusion that the evidence before it presented a disputed question of material fact. *See id.*

[3] Indeed, despite the fact that CFG's notice of intent to foreclose was received and signed for at WSB's address of record, neither Wells Fargo nor any of its predecessor entities with an interest in the subject property either contested the foreclosure or sought to participate in the sale of the property. Wells Fargo did not initiate these proceedings until more than two years after CFG PSP purchased the subject property at public auction.

Page 14 - FINDINGS AND RECOMMENDATION

*Jeremiah*, 246 Or. 568, 571 (1967). The Clunas entities' motion should therefore likewise be granted as to their counterclaim for this court's declaration that Wells Fargo has no interest in the subject property and as to CFG PSP's counterclaim to quiet title in the subject property.

By contrast, the record is void of evidence and the parties' briefing is void of argument in support of the Clunas entities' counterclaim for award of attorney fees. Indeed, the record suggests no theory pursuant to which the Clunas entities could establish entitlement to any such award. The Clunas entities' motion should therefore be denied as to their counterclaim for award of attorney fees.

## CONCLUSION

For the reasons set forth above, Wells Fargo's motion (#46) for summary judgment should be denied in its entirety, the Clunas entities' cross-motion (#53) for summary judgment should be granted as to Wells Fargo's claims in their entirety, as to the Clunas entities' counterclaim for declaratory relief, and as to CFG PSP's counterclaim to quiet title in the subject property, and denied as to the Clunas entities' counterclaim for attorney fees, and, accordingly, the court should declare that Wells Fargo has no interest or estate in the subject property and that CFG PSP has title in the subject property free and clear of any interest asserted by Wells Fargo and/or its predecessor in interest, WSB.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

Page 15 - FINDINGS AND RECOMMENDATION

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 22nd day of July, 2013.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge